UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LEONORILDA ALZAMORA,

    Plaintiff,

v.                                                       Case No: 6:18-cv-618-Orl-41TBS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Leonorilda Alzamora appeals to this Court from the Commissioner of Social Security's final decision to deny her application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). The Court has reviewed the record, including the administrative law judge's ("ALJ") decision, the exhibits, and the joint memorandum submitted by the parties. For the reasons that follow, I respectfully recommend that the Commissioner's final decision be **reversed** and the case **remanded to the Commissioner for the calculation and award of benefits.**

## I. Background

This case has a long history beginning with Plaintiff's application for benefits filed in New Jersey in 2004, alleging that she had become disabled on January 6, 2003 (Tr. 1050-1052, 1331-1333). And, this is the third appearance of Plaintiff's claims in this Court (Case No. 6:11-cv-1129-Orl-31GJK; Case No. 6:13-cv-1338-Orl-DAB). In his opinion and order reversing and remanding the case Judge David A. Baker succinctly summarized the earlier proceedings:

## Procedural History

The course of this case has been exceptionally long and complex. For present purposes, the following history is pertinent.

*The 2004 applications*

Plaintiff protectively filed applications for a period of disability, SSDI and SSI benefits on January 23, 2004, alleging disability commencing on January 6, 2003 (R. 14). The claims were denied initially and upon reconsideration. Plaintiff requested a hearing which was held before an ALJ (R. 14-15). On January 22, 2007, the ALJ found Plaintiff not disabled and issued a notice of unfavorable decision (R. 15). Plaintiff requested review of the hearing decision, and the Appeals Council denied the request for review. Plaintiff appealed that decision to the United States District Court for the District of New Jersey and on December 15, 2008, that Court reversed and remanded Ms. Alzamora's case for further administrative proceedings. The Appeals Council then entered an order remanding her case back to an ALJ.

*The 2007 applications*

While Plaintiff's appeal was pending, she filed new applications with the Social Security Administration on October 30, 2007, alleging disability commencing on January 23, 2007 (R. 138-142). The claims were denied initially and upon reconsideration (R. 87-92, 95-100). Plaintiff requested a hearing before an ALJ. While this request was pending, the Appeals Council remanded the original application back to an ALJ for further proceedings (R. 14). The Appeals Council consolidated the claims and ordered the ALJ to issue a new decision on the associated claims.

A second hearing was held on August 27, 2009, before ALJ Joel H. Friedman (R. 25-82, 427-502). On March 18, 2010, the ALJ issued his notice of unfavorable decision (R. 11-23, 531-543). Plaintiff requested review of the hearing decision. On May 9, 2011, the Appeals Council denied the request for review (R. 1-5, 526-530). Plaintiff appealed that decision to the United States District Court for the Middle District of Florida, and on March 1, 2012, this Court reversed and remanded Ms. Alzamora's case for further administrative proceedings (R. 523-524).

*The 2010 applications*

> While Plaintiff's appeal was pending, she filed new applications with the Social Security Administration, alleging disability commencing on March 19, 2010 (R. 621-630). While this application round was pending at the hearing level, the Appeals Council remanded the original application back to an ALJ for further proceedings (R. 514-518). The Appeals Council consolidated the claims and ordered the ALJ to issue a new decision on the associated claims (R. 517).
>
> Plaintiff appeared at her third administrative hearing by video teleconferencing before ALJ William H. Greer on April 5, 2013 (R. 406, 945-978). On June 27, 2013, the ALJ issued his notice of unfavorable decision (R. 403-426). Plaintiff waited sixty-one days for the ALJ's decision to become the final decision of the Commissioner and this appeal followed (Doc. 1).

(Case No. 6:13-cv-1338-Orl-DAB, Doc. 34 at 1-3).

When the case reached Judge Baker Plaintiff was 44 years old (Id., at 3). The ALJ had determined that she was severely impaired by a disorder of the spine, migraine headaches, obesity, gastritis, a history of carpal tunnel syndrome, and fibromyalgia (Id.). Nevertheless, the ALJ found that Plaintiff still had the residual functional capacity ("RFC") to perform sedentary work subject to certain limitations (Id., at 4). Based upon this finding, the ALJ decided that Plaintiff was capable of doing her past relevant work as an assistant manager at an insurance company, order entry supervisor in the garment industry, and babysitter (Id., at 3-4).

On appeal, Plaintiff argued that: (1) the Commissioner violated her right to an in-person hearing by holding the hearing via video conference despite her objection; (2) the ALJ failed to comply with this Court's prior remand Order and the Appeals Council's remand order to compile a complete record; (3) the ALJ failed to apply the correct legal standards to the opinion of Plaintiff's treating physician, Dr. Stanley Stockhammer; and (4) the ALJ erroneously found that Plaintiff had engaged in substantial gainful activity between 2004 and 2012 (Id., at 5-6).

Judge Baker reversed and remanded the case for two reasons. First, he found that the ALJ had not received and/or acted on Plaintiff's request for an in-person hearing (Id., at 6-7). Second, despite having been ordered to compile or reconstruct the complete record. Judge Baker found that the ALJ failed to comply with this Order and consequently, could not have considered and reviewed the complete record before ruling against Plaintiff (Id., at 7-10). In his Order, Judge Baker said "the administrative decision is **REVERSED** and the matter is **REMANDED** for additional proceedings in **strict** compliance with this Order" (Id., at 1) (emphasis in original).

When the ALJ rendered the decision that is now at issue in this fourth appearance of this case in the district court, Plaintiff was 48 years old. She has a high school diploma and past relevant work as a data entry operator and babysitter (Tr. 22, 154, 156-157, 160).[1] Following a fourth administrative hearing held on December 8, 2016 and a supplemental hearing on September 27, 2017 the ALJ once again found Plaintiff not disabled and issued an unfavorable decision (Tr. 1170-1203, 1451-1513). Plaintiff has appealed this final adverse decision to this Court. She has exhausted her administrative remedies and her case is ripe for review.[2]

---

[1] These and all additional citations are to the record in this case.

[2] The parties' joint memorandum states that Plaintiff waited sixty-one days from the date of the ALJ's decision for it to become final (Doc. 17 at 4). Ordinarily, "a claimant obtains the Commissioner's 'final decision' only after completing the four steps of the administrative review process: (1) initial determination; (2) reconsideration determination, (3) hearing before an ALJ; **and (4) Appeals Council review**." Pizarro v. Comm'r of Soc. Sec., No. 6:12-cv-801-Orl-37DAB, 2013 WL 869389, at *3 (M.D. Fla. Jan. 24, 2013) (emphasis added). But, in the cover letter accompanying his decision, the ALJ said:

> If [Plaintiff does] not file written exceptions [to the ALJ's decision] and the Appeals Council does not review [the] decision on its own, [the ALJ's ] decision will become final on the 61st day following the date of this notice. After [the] decision becomes final, [Plaintiff] will have 60 days to file a new civil action in Federal district court[.]

(Tr. 1171). So, despite the fact that the Appeals Council did not review the ALJ's January 30, 2018 decision, I find that Plaintiff has exhausted her administrative remedies, as they were explained to her in the ALJ's cover letter. The Commissioner has not raised a jurisdictional objection to Plaintiff's cause of action

## II. The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the Commissioner's five-step sequential evaluation process published in 20 C.F.R. § 416.920(a)(4). The ALJ must determine whether the claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform work in the national economy. See Phillips v. Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and at step five, the burden shifts to the Commissioner. Id., at 1241 n.10; Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).

The ALJ determined at step one that Plaintiff engaged in substantial gainful activity during the time period between 2003 through 2015 (Tr. 1176-1177). At step two, the ALJ found Plaintiff was severely impaired by: migraines, obesity, gastritis, history of carpal tunnel syndrome, history of thyroid surgery and cervical degenerative disc disease (Tr. 1177-1180). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926) (Tr. 1180-1181). Before proceeding to step four, the ALJ decided that Plaintiff had the RFC to,

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except … with 1 hour of sit/sand option (need stretch break at their work station for [a] few minutes and sit back down); limited to occasional climbing of ramps/stairs but no climbing of ladders, ropes and scaffolds; limited to occasional balancing, stooping, kneeling and crouching but no

---

and this case should proceed on the merits.

>crawling; limited to occasional overhead reaching but no more than frequent handling and fingering on both sides; should not have concentrated exposure to extremes of cold, wetness and should not work around moving, mechanical parts and unprotected heights.

(Tr. 1181-1192). At step four, the ALJ found Plaintiff unable to perform any past relevant work (Tr. 1192). But, the ALJ ultimately concluded at step five that there were other jobs in the national economy including document preparer and final assembler, that Plaintiff could perform and therefore, she was not disabled (Tr. 1193-1194).

### III. Standard of Review

The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings are supported by substantial evidence. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance. It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" Id. "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam); accord Lowery v.

Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

If the Court finds that the ALJ committed error, that fact alone does not justify remand. The error will be considered "harmless" and not subject to reversal if the claimant fails to establish prejudice. It is the claimant's burden to show that but for the error, the ALJ would have rendered a favorable disability decision. In other words, the claimant must direct the Court's attention to specific additional evidence that had it been considered, would have resulted in a favorable disability decision. Cf. Snell v. Comm'r Soc. Sec., Case No. 6:12-cv-1542-Orl-22TBS, 2013 U.S. Dist. LEXIS 185166, at *9 (M.D. Fla Dec. 6, 2013) (The ALJ's error must result in prejudice, such that had the ALJ done things differently, the residual functional capacity consideration, and ultimate disability decision, would be different) (citing James v. Astrue, No. 3:11-cv-226-J-TEM, 2012 U.S. Dist. LEXIS, at 6-7 (M.D. Fla. Mar. 12, 2012)). The Eleventh Circuit has determined that even though the ALJ may have a particular duty, "a showing of prejudice must be made before [the court] will find that a hearing violated claimant's rights of due process and requires a remand to the Secretary for reconsideration." Kelley v. Heckler, 761 F.2d 1538, 1540 (11th Cir. 1985).

## IV. Discussion

### A. The ALJ Failed to Properly Consider Dr. Stockhammer's Medical Opinions

As she did the last time this case was before the Court, Plaintiff argues that the ALJ failed to apply the correct legal standards to his evaluation of treating physician Dr. Stockhammer's medical opinion (Doc. 17 at 15-19). Weighing the findings and opinions of treating, examining, and non-examining physicians is an integral part of steps four and five of the sequential evaluation process. The Eleventh Circuit clarified the standard the

- 7 -

Commissioner is required to utilize when considering medical opinion evidence in Winschel. There, the court held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. 631 F.3d at 1178-79; see also Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987). "Generally, the opinions of examining physicians are given more weight than non-examining, treating more than non-treating, and specialists on issues within their areas of expertise more weight than non-specialists." Davis v. Barnhart, 186 F. App'x 965, 967 (11th Cir. 2006) (internal citations omitted); see also McCloud v. Barnhart, 166 F. App'x 410, 418-19 (11th Cir. 2006) (The court found that the ALJ failed to explain the weight he gave a consulting physician's report and stated that while the ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion," the ALJ is, however, "required to state with particularity the weight he gives to different medical opinions and the reasons why.").

Absent good cause, the opinions of treating physicians must be accorded substantial or considerable weight. Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988). Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory[3] or inconsistent with the doctor's own medical records." Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir.1991).

---

[3] When a treating physician makes conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).

When a treating physician's opinion does not warrant controlling weight, the ALJ must still consider the following factors in deciding how much weight to give the opinion: "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical issues at issue; (6) other factors which tend to support or contradict the opinion." Logreco v. Astrue, No. 5:07-cv-80-Oc-10GRJ, 2008 WL 783593, at *10 (M.D. Fla. Mar. 20, 2008). Regardless of the amount of weight assigned to the opinion, "the Commissioner 'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight." Hill v. Barnhart, 440 F. Supp. 2d 1269, 1273 (N.D. Ala. 2006) (citation omitted); see also Sullivan v. Comm'r. Soc. Sec., No. 6:12-cv-996-Orl-22, 2013 WL 4774526, at *7 (M.D. Fla. Sept. 4, 2013); Bumgardner v. Comm'r Soc. Sec., No. 6:12-cv-18-Orl-31, 2013 WL 610343, at *10 (M.D. Fla. Jan. 30, 2013); Bliven v. Comm'r Soc. Sec., No. 6:13-cv-1150-Orl-18, 2014 WL 4674201, at *3 (M.D. Fla. Sept. 18, 2014); Graves v. Comm'r Soc. Sec., No. 6:13-cv-522-Orl-22, 2014 WL 2968252, at *3 (M.D. Fla. June 30, 2014).

Dr. Stockhammer treated Plaintiff numerous times between August, 2010 and September, 2016 (Tr. 744, 746, 832, 889, 1976, 1998-2003, 2008, 2059-2096, 2112, 2135-2139, 2163, 2180-2182), and I find that he is a "treating physician." Caplan v. Comm'r Soc. Sec., Case No. 6:15-cv-1926-Orl-CM, 2017 WL 1030875, at *3-4 (M.D. Fla. Mar. 17, 2017) (A treating physician is the claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant], or who has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the claimant.") (citing 20 C.F.R §§ 404.1502, 416.902).

On August 16, 2010 Dr. Stockhammer opined that Plaintiff's grip strength in her right hand was 4/5, that she had a decreased ability to perform fine manipulation, and that she required frequent periods of rest on a daily basis (Tr. 832). Dr. Stockhammer also opined that Plaintiff experienced flare-ups three days per week on a continued basis (Id.).

Dr. Stockhammer's opinion that Plaintiff needs "frequent periods of rest" is incompatible with the ALJ's conclusion that Plaintiff is able to perform work at the sedentary level. A plaintiff who is unable to sit for the required amount of time without taking frequent breaks to rest is, by definition, unable to perform sedentary work. See Crooker v. Apfel, 114 F. Supp. 2d 1251, 1253 (S.D. Ala. 2000) ("The evidence clearly reflects that plaintiff can tolerate sedentary work only with frequent rests as outlined by Dr. Crotwell the examining physician. Therefore, this court finds that the Commissioner's conclusion that plaintiff can perform sedentary work and is not disabled is not supported by substantial evidence; and that the Commission has failed to carry his burden of proving that plaintiff is "capable... of engaging in... substantial gainful work which exists in the national economy."); see also Durham v. Apfel, 225 F.3d 653 (4th Cir. 2000) (A determination that the claimant had the RFC to perform sedentary work was vacated where the ALJ ignored evidence that the claimant could not work 8 hours without lying down); Tackett v. Apfel, 180 F.3d 1094 (9th Cir. 1999) (To be physically able to work the full range of sedentary jobs, a claimant must be able to sit through most or all of an eight hour day); 2 Soc. Sec. Disab. Claims Prac. & Proc. § 22:209 (2nd ed.) ("If an individual cannot sit for prolonged periods of time then sedentary work is not possible").

The ALJ recognized that Dr. Stockhammer was Plaintiff's treating physician and the ALJ referenced Plaintiff's argument about the significance of Dr. Stockhammer's opinion that she would need "frequent periods of rest on a daily basis and that her flare-

ups would cause 3 absences per week" (Tr. 1183). Then, the ALJ concluded that "there is no opinion from any of her treating providers including Dr. Stockhammer regarding any functional limitations or opinions of disability." (Tr. 1191). This is simply wrong. Dr. Stockhammer expressed an opinion on a functional limitation that would render Plaintiff unable to perform the level of activity prescribed in her RFC (Tr. 832).

The Commissioner acknowledges the ALJ's error but argues that it is harmless (Doc. 17 at 16-19).[4] According to the Commissioner, the fact that the ALJ restated Plaintiff's counsel's argument concerning Dr. Stockhammer's opinion is evidence that the doctor's opinion was considered and factored into Plaintiff's RFC (Id. at 17). In my view, this is wishful thinking on the part of the Commissioner. She fails to explain how the ALJ can be presumed to have considered an opinion where the ALJ stated that no such opinion appears in the record. The Commissioner also argues that Dr. Stockhammer's opinion predates the relevant period; Plaintiff failed to show that the opinion is inconsistent with her assigned RFC; and the term "flare-ups" is too vague to provide any meaning (Id. at 17-18). Unfortunately for the Commissioner, the ALJ did not say any of these things. Consequently, these arguments are futile because the Court cannot consider *post hoc* arguments on appeal. The Commissioner's *post hoc* arguments cannot be substituted for the ALJ's stated reasoning at the administrative level. The Court is not interested in what argument the Commissioner makes at this stage. The Court is only concerned with the reasoning the ALJ offered (or failed to offer) when he made his decision. See Lawton v. Soc. Sec., 431 F. App'x 830, 832-834 (11th Cir. 2011) (quoting Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984)); Mulholland v. Astrue, Case No.

---

[4] The Commissioner argues that we can't be sure the opinion was authored by Dr. Stockhammer because the signature is illegible; then she concedes that the opinion was authored by Dr. Stockhammer (Id. at 17).

1:06-cv-2913-AJB, 2008 WL 687326 (N.D. Ga. Mar. 11, 2008) (the Court rejected the Commissioner's argument noting that the "court cannot consider post hoc reasons for affirming an ALJ's decision, and instead must confine its review to the validity of the grounds upon which the ALJ based its decision.").

Therefore, I cannot conclude that the ALJ's determination of Plaintiff's RFC is based on substantial evidence and remand is required.

B.  Whether Plaintiff Engaged in Substantial Gainful Activity

The ALJ found that Plaintiff had engaged in substantial gainful activity during the period 2003 through August 21, 2012 based on her testimony that during this period she provided babysitting services (Tr. at 1176). Plaintiff said that when she watched children, she received substantial help from her mother and two daughters without whom, she could not have performed the work (Id.). Plaintiff testified to having children in her home 20-25 hours per week and that she declared the resulting $12,000-$16,000 per year in babysitting income (Id.). Plaintiff also testified that she relied on her mother and daughters to perform the babysitting services (Tr. 1177). But, the ALJ did not find this testimony persuasive (Id.). The ALJ found that because Plaintiff filed tax returns in which she declared the income, Plaintiff had engaged in substantial gainful activity (Id.).

The Regulations define "substantial work activity" as "work activity that involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a). The Regulations define "gainful work activity" as "work activity that you do for pay or profit." 20 C.F.R. § 404.1572(b). When, as here, the claimant is self-employed the Commissioner uses three tests to determine whether the claimant has engaged in substantial gainful activity:

> (1) You have engaged in substantial gainful activity if you render services that are significant to the operation of the business and receive a substantial income form the business.

- 12 -

> (2) You have engaged in substantial gainful activity if your work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in your community who are in the same or similar businesses as their means of livelihood.
>
> (3) You have engaged in substantial gainful activity if your work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in § 404.1574(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay an employee to do the work you are doing.

20 C.F.R. § 404.1575(a)(2). The Commissioner applies test one first and then, if the result is that the claimant has not engaged in substantial gainful activity, the Commissioner applies tests two and three. Id. The ALJ did not apply the correct legal standard in this case because he failed to apply any of the three tests mandated by the Regulations.

The Commissioner argues, correctly, that "Earnings reported on income tax returns raise a presumption that the taxpayer was gainfully employed but the presumption is rebuttable." Johnson v. Sullivan, 929 F.2d 596, 598 (11th Cir. 1991). But, the Commissioner cites no legal authority for the proposition that merely because a claimant filed income tax returns, the ALJ is excused from employing the tests the Regulations assure will be utilized. Remand is also required for this reason.

C. Remaining Argument

Plaintiff makes additional arguments concerning the ALJ's treatment of her testimony about her pain and limitations. Because remand is required based upon Plaintiff's first two arguments, it is unnecessary to review this remaining objection to the ALJ's decision. Freese v. Astrue, No.8:06-cv-1839-T-EAJ, 2008 WL 1777722, at *3 (M.D. Fla. April 18, 2008) (citing Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1991)).

- 13 -

D.  Remand for An Award of Benefits Only Is Appropriate

Plaintiff requests that the Court take the extraordinary step of reversing the case outright and remanding solely for the Commissioner to calculate an award of benefits. Plaintiff argues that this is appropriate given the lengthy history of the case and the Commissioner's inability (or unwillingness) to apply the correct legal standards to the evidence (Doc. 17 at 31-33). The Commissioner objects to an outright award of benefits and requests that she be given a fifth opportunity to properly consider Plaintiff's case (Id. at 33-34).

In Social Security cases, the proper remedy for errors committed during the administrative process is a remand for further proceedings. However, the Commissioner does not enjoy "endless opportunities to get it right." See Goodrich v. Comm'r of Soc. Sec., No. 6:10-cv-1818-Orl-28DAB, 2012 WL 750291, at *14 (M.D. Fla. Feb. 7, 2012) (quoting Seavey v. Barnhart, 276 F.3d 1, 13 (1st Cir. 2001)); Ray v. Astrue, No. 8:08-cv-335-DAB, 2009 WL 799448, at *9 (M.D. Fla. Mar. 24, 2009). It is extremely rare for the Court to remand a Social Security case solely for an award of benefits but it may do so when some combination of the following factors is presented. Where there have been repeated remands; the Commissioner has failed to follow the court's remand instructions; the Commissioner has been unable to carry her burden of proof; or the delay has been extraordinary delay. See Goodrich, 2012 WL 750291, at *13 (citing 2 Barbara Samuels, Social Security Disability Claims: Practice and Procedure § 19:59 (2d ed 2008)). Any one of these equitable considerations, by itself, provides sufficient basis for a remand for benefits. See Wilder v. Apfel, 153 F.3d 799 (7th Cir. 1998) (remand for benefits because the ALJ rejected the court's prior discussion of the evidence); Ray, 2009 WL 799448 (remanded because the claimant experienced a fifteen year delay due to deficiencies in

the record, created by the Commissioner); Del Pilar v. Sullivan, 756 F. Supp.117 (S.D.N.Y. 1990) (remanded because the ALJ failed to carry his burden of establishing his decision was based on substantial evidence); Schonewolf v. Callahan, 972 F. Supp. 277 (D.N.J. 1997) (remanded for benefits because the unreasonable delays caused claimant to wait close to six years for the resolution of his initial application for benefits); Rohan v. Barnhart, 306 F. Supp. 2d 756 (N.D. Ill. 2004) (remanded for benefits because over the course of eleven years, the plaintiff had three hearings before an ALJ, three petitions to the Appeals Council and three appeals to the district court. The court determined that the "delays in the case were cause by 'deficiencies that were not attributable to Plaintiff's error.'); Frazee v. Barnhart, 259 F. Supp. 2d 1182 (D. Kan. 2003) (remanded for benefits because the ALJ had two opportunities to conduct a proper determination but failed to do so and the case had been pending for almost ten years); Huhta v. Barnhart, 328 F. Supp. 2d 377 (W.D.N.Y. 2004) (remanded for benefits because Commissioner had three opportunities to apply the correct legal standard and failed, which caused nine years to elapse before claimant obtained a resolution of his initial application). In Moran v. Comm'r of Soc. Sec., I wrote:

> In my view, the Commissioner's mishandling of this case is unconscionable. The delays which have resulted from the Commissioner's mistakes have kept this case in the pipeline for almost ten years during which time Plaintiff has not received a fair hearing, or benefits. To send the case back to the Commissioner for a fourth time will only further delay Plaintiff's application. The Commissioner is not "entitled to adjudicate a case *ad infinitum* until it correctly applies the proper legal standard." Goodrich, 2012 WL 750291, at *13 (citing Sisco v. United States Dep't of HHS, 10 F.3d 739, 746 (10th Cir. 1993)). Fairness demands that the review process end at some point. Pavlou v. Astrue, No. 809-CV-1456-T-30MAP, 2010 WL 3340515, at *7 (M.D. Fla. Aug. 6, 2010) adopted at, No. 809-CV-1456-T-30MAP, 2010 WL 3340513 (M.D. Fla. Aug. 25, 2010).

6:15-cv-1065-Orl-PGB-TBS, Doc. 22 at * 10 (Feb. 22, 2016). United States District Judge Paul Byron, shared my "dismay regarding the Commissioner's gross mishandling of Plaintiff's application for benefits and the amount of delay caused as a result." 6:15-cv-1065-Orl-PGB-TBS, Doc. 25 at 5 (May 31, 2016)); see also Rainey v. Comm'r Soc. Sec., Case No. 5:17-cv-541-Oc-PRL, 2018 WL 3830069, at *3 (M.D. Fla. Aug. 13, 2018) ("If the Court remands for further administrative proceedings, plaintiff will be faced with an even longer delay, without any assurance that the Commissioner will finally produce a decision supported by substantial evidence and which applies the correct legal standard."); Quanstrom v. Comm'r Soc. Sec., Case No. 6:15-cv-990-Orl-37GJK, 2016 WL 3769958 (M.D. Fla. July 15, 2016).

      This case is even more egregious than Moran. It has been going on for more than fifteen years during which time Plaintiff has attended five administrative hearings presided over by at least three administrative law judges. She has appealed their decisions to the district court on three prior occasions and prevailed each time. Still, the Commissioner has not applied the correct legal standards. This has gone on long enough. The Commissioner has had ample opportunity to properly consider the evidence and issue a defensible decision. I see no reason for further delay and am recommending that benefits be awarded.

## V. Recommendation

      For the reasons stated above, it is respectfully **RECOMMENDED** that:

      (1) The Commissioner's final decision be **REVERSED** under sentence four of 42 U.S.C. §405(g) for further proceedings consistent with the findings in this Report.

(2) This case be **REMANDED** to the Commissioner only for a calculation of an award of benefits commencing January 6, 2003 which is the date upon which Plaintiff alleges her disability began (Tr. 1173).

(3) The Clerk be **DIRECTED** to **ENTER** judgment, **TERMINATE** any pending motions, and **CLOSE** the file.

### VI. Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

**DONE** and **ORDERED** in Orlando, Florida on April 26, 2019.

*[signature]*
THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding District Court Judge
    Counsel of Record